IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Johnny Boyd, Jr.,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | C/A No. 0:13-638-TLW-PJG<br><br>**REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Johnny Boyd, Jr. ("Boyd"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In March 2010, Boyd applied for DIB and SSI, alleging disability beginning June 22, 2007.[1] Boyd's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 22, 2011, at which Boyd,

---

[1] At the administrative hearing, Boyd, through counsel, amended his alleged onset date of disability to November 27, 2008. The ALJ's decision references this amendment; however, as noted by the Commissioner, the body of the ALJ's decision continues to reference Boyd's original alleged onset date. Since the ALJ's decision as written encompasses the amended alleged onset date, the court agrees with the Commissioner that this is not a material issue.



who was represented by Robertson H. Wendt, Jr., Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 29, 2011 denying benefits and concluding that Boyd was not disabled. (Tr. 15-28.)

Boyd was born in 1953 and was fifty-three years old at the time of his alleged disability onset date. (Tr. 146.) He has a high school education and past relevant work experience as a truck driver. (Tr. 176-77.) Boyd alleged disability since March 1, 1999 due to hearing problems, high blood pressure, diabetes, joint disease, knee problems, positive PPD (tuberculosis testing), and retinopathy. (Tr. 146, 175.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 22, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: non-insulin dependent diabetes mellitus, diabetic retinopathy, hearing loss, and mild osteoarthritis of the left knee (20 CFR 404.1520(c) and 416.920(c)).
   \* \* \*
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
   \* \* \*
5. . . . [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). . . . [H]e can lift/carry 50 pounds on an occasional basis and lift/carry 25 pounds on a frequent basis. The claimant can occasionally use a ladder rope, or scaffold, as well as occasionally climb ramps and/or stairs, balance, crawl, and kneel with his left lower extremity. He can frequently stoop and crouch. The claimant can sit, stand, or walk for approximately 6 hours out of an 8-hour workday. The work, which he can do, is limited to occupations, which do not involve depth perception as a primary element of the job. The claimant



> cannot be exposed to loud background noise.  He must avoid concentrated exposure to fumes.
>
> \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

7. The claimant was born . . . [in] 1953 and was 53 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 22, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-28.)  The Appeals Council denied Boyd's request for review on January 29, 2013, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-5.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R.



§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Boyd raises the following issues for this judicial review:

I.  The ALJ Committed Reversible Error By Failing to Find That Diabetic Peripheral Neuropathy and Peripheral Artery Disease (PAD) Were Severe Impairments and By Failing to Explain The Grounds For This Omission.

II. The ALJ Improperly Rejected Dr. Rojugbokan's Treating Physician Opinion, and the ALJ's RFC Finding With Regard to Standing and Walking Was Not Supported By Substantial Evidence.



    III.    The ALJ Drew Unwarranted Conclusions from Boyd's Description of His Daily Activities and Improperly Found that Boyd Had Not Been Compliant With Prescribed Treatment.

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

**A.    Severe Impairments**

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If an impairment is only "a slight abnormality" which causes only "minimal effect on the individual" and does not interfere with the individual's ability to work, the impairment is not considered to be severe. Evan v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1981).

Boyd first argues that the ALJ erred in failing to make specific findings as to whether Boyd's diabetic peripheral neuropathy and peripheral artery disease ("PAD") were severe impairments. Specifically, Boyd argues that the absence of such findings or explanation is prejudicial because these were two of the three conditions that allegedly limited his ability to stand and walk, which is consistent with Dr. Adebola Rojugbokan's opinion and his testimony. The court disagrees.

As pointed out by the Commissioner, although Dr. Rojugbokan's opinion—which is discussed in greater detail below—references conditions of "IDDM" (Insulin-Dependent Diabetes Mellitus) and "Coronary Artery $d_3$," in a list of Boyd's diagnosed impairments, he does not include diabetic peripheral neuropathy or PAD. (Tr. 477.) Dr. Rojugbokan also does not indicate or

otherwise attribute any of Boyd's diagnoses to any specific limitations. (Tr. 477-80.) Moreover, neither the documentation submitted with his application for disability nor Boyd's testimony identifies these specific impairments. Boyd's testimony generally references problems with his diabetes, circulation, and breathing. (Tr. 42-53.) Finally, the ALJ did acknowledge these alleged impairments in the opinion, discussing Boyd's inmate medical records from April 2010 which revealed diabetic neuropathy reported and a consultative examination in January 2011 that included a diagnosis of questionable peripheral artery disease. (Tr. 18, 19.)

Based on the foregoing, the court finds that Boyd has failed to demonstrate any error by the ALJ. The medical evidence in the record shows, at most, possible diagnoses of these conditions, which, standing alone, does not support finding that it is a severe impairment. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (noting that "[t]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition"). Furthermore, even if the ALJ erred in failing to find any of these impairments were severe, the court finds any error is harmless, as the ALJ continued with the sequential process and considered the effects of all of Boyd's impairments in formulating his residual functional capacity. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

B.   **Dr. Adebola Rojugbokan**

Boyd next argues that the ALJ improperly discounted portions of an opinion from Dr. Rojugbokan, Boyd's treating physician, which rendered the ALJ's residual functional capacity assessment unsupported. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all



of the factors provided in 20 CFR 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5.  This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

As observed by the ALJ, Dr. Rojugbokan completed a treating physician's statement form on July 21, 2011.  The ALJ accurately summarized the opinion as follows:

> This document was drafted by the claimant's attorney, and filled out by Dr. Rojugbokan.  Dr. Rojugbokan noted that he first treated the claimant May 27, 2010, and last treated him July 21, 2011, for the following diagnoses:  insulin-dependent diabetes mellitus, right inguinal hernia, hypertension, asthma, and coronary artery disease.  Dr. Rojugbokan checked "yes," that the claimant's statements concerning symptoms and functional limitations were reasonably consistent with objective medical evidence.  According to Dr. Rojugbokan, the claimant was capable of occasionally lifting/carrying 50 pounds and frequently lifting/carrying 25 pounds, as well as sitting for 6 hours in an 8-hour workday, and standing or walking for 2 hours in an 8-hour workday.  The claimant could frequently bend and was not limited in the use of hand or foot controls for pushing or pulling.  The claimant would need to change positions every 1-2 hours.  Dr. Rojugbokan noted environmental limitations of heat, cold, dust, odors, and fumes; however, he did not specify to what degree.  He opined the claimant had a significant limitation in his ability to concentrate, remain alert, think clearly, or otherwise attend to work tasks to completion during an 8-hour workday, as a result of fatigue; however, his concentration and attention to tasks attention caused by this fatigue was "no significant limitation."  Dr. Rojugbokan opined the claimant was capable of part-time work and that he would miss fewer than 2 days of work per month.  Lastly, to the question regarding the claimant's "prognosis for return to full time work," Dr. Rojugbokan checked, "improvement expected" (Exhibit l5F).

(Tr. 20.)  The ALJ afforded this opinion weight to the extent that it was consistent with Boyd's residual functional capacity assessment.  The ALJ further stated that it was given limited weight due



to some inconsistencies within the opinion. Specifically, the ALJ stated that Dr. Rojugbokan reported that Boyd's diabetes was insulin dependent, when it was not. The ALJ further found that there was an inconsistency—either within the prepared document or the doctor's response—between Dr. Rojugbokan's checking a box indicating that Boyd had a significant limitation in his ability to concentrate, remain alert, think clearly, or otherwise attend to work tasks to completion during an eight-hour workday as the result of fatigue, and checking a box indicating that Boyd would have "no significant limitation" in concentration and attention to tasks as a result of this fatigue. (Tr. 26; see Tr. 478, 482.)

Boyd argues that the ALJ failed to specifically explain his decision to give Dr. Rojugbokan's opinion with regarding to his standing limitations and, therefore, the ALJ failed to provide substantial evidence to support the residual functional capacity assessment. The court disagrees. Upon review of the ALJ's decision and the record, the ALJ appears to have applied the relevant factors in evaluating Dr. Rojugbokan's opinion and Boyd has failed to demonstrate that his decision to afford little weight to portions of Dr. Rojugbokan's opinion, including the standing limitations, is unsupported by substantial evidence. See 20 C.F.R. §§ 404.1527(c), 416.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). The ALJ's decision is further supported by the opinions of the state agency reviewers and two opinions from a consultative examiner, Dr. Harriett R. Steinert. Importantly, opinions from non-examining physicians, which in this case are the opinions from the state agency reviewers, can constitute substantial evidence in support of an ALJ's decision over the opinions of examining physicians so long as the opinion from the non-examining



physician is consistent with the record as a whole. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence"). Similarly, to the extent that Boyd alleges that the ALJ impermissibly interpreted medical evidence in order to discount the opinion of Dr. Rojugbokan, the court disagrees. (See also Def.'s Br. at 10-11, ECF No. 21 at 10-11) (providing examples for comparison of ALJ's who impermissibly exercised medical judgment and pointing out that the plaintiff argues elsewhere in his brief that clinical findings support further limitations). It is clear from the ALJ's opinion that the ALJ, as part of his duties in weighing the evidence, properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence. Where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

For all of these reasons, the court finds that Boyd has not shown that the Commissioner's decision with regard to Dr. Rojugbokan's opinion was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## C.   Boyd's Subjective Complaints

Finally, Boyd argues that the ALJ erred in evaluating his subjective complaints. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[3] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they

---

[3] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)   Your daily activities;
> (ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ found that

> [t]he evidence of the claimant's activities is largely contrary to his assertions of disabling symptoms and limitations. This evidence also supports the conclusion that he has the capacity to perform modified medium work activities as set forth above. As previously discussed, the claimant testified that he lives with his mother, who supports him financially. Specifically, the claimant acknowledged that he is able to cook, take out the trash, shop, and walk to his brother's house.
>
> This is a case of an individual with a history of poorly controlled diabetes mellitus and hypertension. However, my review of the evidence in the record shows a common theme of noncompliance prevalent throughout the entire record, which likely greatly exacerbates his symptoms. I find that the claimant's symptoms of diabetes mellitus and hypertension can be controlled if he is compliant with his treatment regimen. For example, the claimant's HgbAlc was brought down from 11% to 7.6% in 2 month's time with tighter blood glucose control. I specifically note that the claimant's HgbAlc measured as low as 6.2% while he was incarcerated. The



> regulations specifically address noncompliance in 20 CFR 404.1530(b), which provides as follows: "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled" (Exhibits 1F, 2F).
>
> The undersigned also notes that the claimant has a history of incarceration, with incarceration until January 2010, as reported by his attorney, and Exhibit 2F. While such incarceration, per se, does not affect the claimant's credibility, his conviction for domestic issues such as threatening his wife and violating his restraining order, necessarily involve a finding of moral turpitude, which does not bolster his credibility.

(Tr. 23-24.) However, the ALJ also stated later in the opinion that with regard to Boyd's report that he is limited due to shortness of breath, the ALJ afforded him "the benefit of the doubt and limited him to the avoidance of fumes." (Tr. 25.)

Boyd argues that the fact that he is able to perform limited activities of daily living is not inconsistent with a conclusion of disability. He further argues that the ALJ failed to consider the "quality, independence, frequency and appropriateness of those activities" and failed to demonstrate how these activities show he could sustain the demands of medium work. (Pl.'s Br. at 38, ECF No. 16 at 38.) Finally, Boyd appears to challenge the ALJ's determination that he failed to follow prescribed treatment; to argue that the ALJ improperly interpreted medical evidence; and to argue that the ALJ failed to consider his lack of funds after he was released from prison.

Upon thorough review of the record, including the ALJ's decision, the court finds that although Boyd challenges the relevance and/or the propriety of the reasons offered by the ALJ to discount his allegations, Boyd has failed to demonstrate and the court cannot say that the ALJ's reasons were improper or that the ALJ's credibility analysis was not supported by substantial evidence. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (discussing the factors in evaluating subjective complaints); Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays, 907 F.2d at 1456 (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); see also Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints). The court observes that considering Boyd's activities of daily living was one of several factors that the ALJ considered. But see Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

Further, contrary to Boyd's assertion, there is evidence in the record supporting a finding that Boyd was not always compliant with his medication. (See Tr. 391) ("He has hypertension and diabetes, but he has been out of his medications for four months."). A finding of noncompliance with treatment may preclude a finding of disability. See 20 C.F.R. §§ 404.1530, 416.930 ("If you do not follow the prescribed treatment without good reason, we will not find you disabled"); SSR 82-59, 1982 WL 31384, at *1 ("Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability . . . .") (emphasis in original). However, when a disability determination is precluded on this basis, SSR 82-59 provides that there are circumstances under



which "an individual's failure to follow prescribed treatment will be generally accepted as 'justifiable' and, therefore, such 'failure' would not preclude a finding of 'disability.'" In this case, the ALJ's opinion does not indicate that he would have found Boyd disabled but for Boyd's noncompliance. The ALJ's opinion does not reflect that he primarily relied on Boyd's noncompliance with prescribed treatment in determining his residual functional capacity; rather, it shows that in assessing Boyd's credibility, the ALJ properly addressed his noncompliance with medication. Accordingly, the court finds that the Boyd has not shown that the ALJ relied on noncompliance as the basis for finding Boyd not disabled and cannot demonstrate that the ALJ violated SSR 82-59.[4] See Meyer v. Comm'r of Soc.Sec.Admin., 456 F. App'x 230, 232 (4th Cir. Nov. 16, 2011) (rejecting the claimant's argument that the ALJ erred by finding that the claimant failed to follow prescribed medical advice without following the procedures in SSR 82-59 because "the ALJ did not conclude that [the claimant] was disabled but had failed to follow prescribed treatment, and therefore was not entitled to benefits"); Copper v. Astrue, C/A No. PWG-08-2621, 2010 WL 3294691, at *3 (D. Md. Aug. 19, 2010) (stating that "SSR 82-59 only applies where the ALJ has determined that an individual's impairments preclude him or her from engaging in substantial gainful activity, i.e., an individual who would otherwise be found disabled under the Act" and does not apply in assessing a claimant's credibility pursuant to SSR 96-7p); cf. Ibarra v. Commissioner, 92 F. Supp. 2d 1084, 1087 (D. Or. 2000) ("The ALJ did not expressly purport to deny claimant benefits on the ground that she failed to follow prescribed treatment . . . but his

---

[4] The court also observes that there is no testimony in the record that Boyd did not comply with his prescribed treatment because he could not afford it. Cf. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (indicating that a claimant for Social Security benefits should not be "penalized for failing to seek treatment [he] cannot afford").



comments . . . and his ultimate finding that claimant is not disabled, rest[ed], in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her [bipolar] condition to be worse than it might otherwise be.").

In sum, the court finds that Boyd has failed to demonstrate that the ALJ's credibility evaluation as a whole is unsupported by substantial evidence or reached through application of an incorrect legal standard.

## RECOMMENDATION

For the foregoing reasons, the court finds that Boyd has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 17, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).